***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the *Page 2 
Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with modifications.
 ***************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The employee-employer relationship existed at all times relevant to this proceeding.
2. Clarendon National Services, Inc., was the carrier on the risk at all times relevant to this proceeding.
3. The parties were subject to the North Carolina Workers' Compensation Act at all times relevant to this proceeding, with the employer employing the requisite number of employees to be bound under the provisions of said Act.
 *************** EXHIBITS
1. The following documents were accepted into evidence by the Deputy Commissioner as stipulated exhibits:
 a. Exhibit 1: Industrial Commission Forms and filings; and
 b. Exhibit 2: Plaintiff's medical records (supplemented by records from Maple Hill Medical Center).
2. The following documents were accepted into evidence by the Deputy Commissioner as Defendants' exhibits:
 a. Exhibit 1: Documents from Plaintiff's personnel file; and *Page 3 
 b. Exhibit 2: Drug screen result.
3. The Deputy Commissioner also received responses to written questions propounded by the Deputy Commissioner to Dr. Scott C. Elston. Copies of said written questions and responses were provided to both parties, and the Commission has reviewed said responses.
 *************** RULING ON MOTION TO DISMISS
Defendants have moved to dismiss plaintiff's appeal for plaintiff's failure to file his Form 44 and brief. Upon review of defendants' motion, and in light of plaintiff's pro se status, the Full Commission, in its discretion, declines to dismiss plaintiff's appeal. The Full Commission notes that Plaintiff filed his Form 44 with the Commission on November 12, 2007, and a second Form 44 on November 26, 2007; however, it appears a copy of each was not sent to defendants. Although defendants did not have a copy of the Form 44 when preparing for oral argument in this matter, the Full Commission granted additional time to defendants to submit a supplemental brief on appeal. Thus, the Full Commission finds that defendants have not shown they were prejudiced on appeal. For these reasons, defendants' motion to dismiss plaintiff's appeal is hereby DENIED.
 ***************
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, a truck driver, began working with defendant-employer as a driver helper on June 3, 2003. Defendant-employer is in the moving business and plaintiff, who had no *Page 4 
prior experience driving for a residential mover, was placed in a training program to be a driver for defendant-employer.
2. On September 19, 2003, while he was at work on defendant-employer's yard in Wilmington, North Carolina, at about 10:30 a.m., plaintiff was standing to the right of a forklift that was being operated by another gentleman. The forklift operator began to drive the forklift forward and caught the heel/ankle of Mr. Holmes' left foot under the right rear wheel of the forklift.
3. Plaintiff was immediately taken to Doctor's Urgent Care in Wilmington for medical treatment. X-rays to plaintiff's left ankle and heel were read as negative, and plaintiff was diagnosed with sprains to his left heel and ankle. Plaintiff also submitted a urine sample for a routine post-accident drug screen.
4. On September 22, 2003, plaintiff's drug screen was reported as being positive for marijuana. Defendant-employer immediately terminated plaintiff per company policy.
5. Plaintiff continued to receive medical treatment with Doctor's Urgent Care and physical therapy with ProActive Therapy through September 29, 2003. Plaintiff received no further treatment with these providers after that date. A review of the medical record in this matter shows that plaintiff was written out of work through September 29, 2003; however, there is no evidence to show plaintiff was at any time written out of work beyond that date.
6. Plaintiff's last medical treatment related to his left foot/ankle injury was on October 9, 2003, with Maple Hill Medical Center.
7. About four weeks after his last appointment with Maple Hill Medical Center, plaintiff returned to work, with a trucking company hauling logs. In this position, plaintiff earned wages that were greater than or equal to his pre-injury wages. Plaintiff has provided no *Page 5 
evidence to show that any period of unemployment since that time was related to the September 19, 2003 injury.
8. Upon beginning his employment with defendant-employer, plaintiff was given an employee handbook, which, in part, set out the company's drug testing policy and noted that "any employee who tests positive will be subject to immediate dismissal."
9. As of the date of the hearing before the Deputy Commissioner, at least fifteen other employees of defendant-employer had been terminated for positive drug screens.
10. Had plaintiff not been justifiably terminated for failing a drug test, defendant-employer would have had at least two positions available for plaintiff within his physical restrictions immediately following plaintiff's injury as part of the driver training program.
11. Dr. Elston, the physician who certified the drug screen results to defendant-employer, could not say whether the THC level found in the drug screen was consistent with plaintiff's having used marijuana in the 24 hours prior to the accident. Plaintiff denied having used marijuana.
12. Dr. Elston could not say whether the THC level found in the drug screen impaired plaintiff to the point of being a proximate cause of the accident by slowing plaintiff's reaction time.
13. Defendants have not shown that any delay in plaintiff's pursuit of his claim has prejudiced them. Further, plaintiff's former attorney withdrew from representing him in 2004, and plaintiff is a long-haul trucker, which limits his availability in North Carolina to pursue his claim. *Page 6 
14. The medical treatment that plaintiff has heretofore received for his left foot/ankle injury has been reasonably required to effect a cure, provide relief and/or lessen plaintiff's period of disability.
15. Plaintiff testified that, as of the date of the hearing before the Deputy Commissioner, his left heel remained sore.
16. Based upon a review of the record in this matter, the Full Commission finds that plaintiff's average weekly wage at the time of the injury was $593.53, which yields a weekly compensation rate of $395.71.
 ***************
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendants have failed to show that any delay in plaintiff's pursuit of his claim caused them any prejudice. Further, any delay has not been unreasonable, given Plaintiff's circumstances. As such, plaintiff's claim is not barred by laches. Cieszko v. Clark, 92 N.C. App. 290 (1988).
2. Defendants have failed to show that plaintiff's injury was proximately caused by his having been under the influence of a controlled substance and, thus, plaintiff's claim is not barred by the provisions of N.C. Gen. Stat. § 97-12.
3. Plaintiff sustained a compensable injury by accident to his left foot/ankle, arising out of and in the course of his employment with defendant-employer, on September 19, 2003. N.C. Gen. Stat. § 97-2(6). *Page 7 
4. Defendant has shown that, following his injury, plaintiff was terminated for misconduct or fault, unrelated to his compensable injury, for which a non-disabled employee would ordinarily have been terminated. Plaintiff thus constructively refused suitable employment, and he was able soon thereafter to find suitable work. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228 (1996).
5. Plaintiff is entitled to temporary total disability compensation at the weekly rate of $395.71 from September 19, 2003, the date of the injury, through September 29, 2003, the last day on which plaintiff was written out of work. N.C. Gen. Stat. § 97-29. This award is subject to the seven-day waiting period provided in N.C. Gen. Stat. § 97-28.
6. Plaintiff is entitled to have defendants provide him with further medical treatment, if necessary, for his compensable injury. Plaintiff is also entitled to have defendants pay for the medical treatment he has already received for said injury, to the extent they have not already paid for it. N.C. Gen. Stat. §§ 97-2(19); 97-25; and 97-25.1.
7. Once Plaintiff has reached maximum medical improvement, he will be entitled to payment for any permanent partial disability he has in his left foot/ankle resulting from his compensable injury. N.C. Gen. Stat. § 97-31. Should plaintiff receive a permanent partial disability rating that would entitle him to more than twenty-one days of disability compensation pursuant to N.C. Gen. Stat. § 97-31, plaintiff shall be entitled to receive benefits for the first seven days of disability. N.C. Gen. Stat. § 97-28.
 *************** *Page 8 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall authorize and pay for an evaluation of plaintiff with an orthopedist of their choice as set out below. Defendants shall, as soon as reasonably possible, schedule an appointment for plaintiff with such orthopedist for a determination as to whether any further medical treatment is reasonably required to effect a cure and/or provide relief to plaintiff, and whether such treatment would be causally related to plaintiff's compensable September 19, 2003 left foot/ankle injury. If the orthopedist finds affirmatively on these questions, defendants shall authorize and pay for further treatment as recommended by such physician, including but not limited to diagnostic testing, surgery, prescriptions, referrals and mileage. Prior to the evaluation, defendants shall provide the chosen orthopedist with copies of all relevant medical records, and defendants shall pay for any diagnostic testing that such physician orders as part of the evaluation.
2. Should the evaluating orthopedist determine that plaintiff is at maximum medical improvement for his compensable left foot/ankle injury and assign a permanent partial disability rating, defendants shall pay permanent partial disability benefits to plaintiff in accordance with N.C. Gen. Stat. § 97-31, subject to plaintiff's right to a second opinion on the PPD rating per N.C. Gen. Stat. § 97-27(b).
3. Should a disagreement arise between the parties concerning the course of plaintiff's medical treatment, either party may file a motion with the Commission's Office of the Executive Secretary, or may file a Form 33 Request for Hearing. *Page 9 
4. To any extent they have not done so already, defendants shall pay for the medical treatment that plaintiff has heretofore received for his compensable left foot/ankle injury, including but not limited to such treatment with or at the direction of Doctor's Urgent Care, ProActive Therapy, and/or Maple Hill Medical Center. If plaintiff, or any third-party, has paid for any such treatment, defendants shall make full reimbursement to that party.
5. Defendants shall pay the costs.
This 5th day of March 2008.
 S/___________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1